IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DAILY OFFICE PRODUCTS, INC, | ) | Case No. 11-19954 |
| an Illinois corporation, | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor in Possession | ) | |

AGREED FINAL ORDER AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING REPLACEMENT LIENS AND ADEQUATE
PROTECTION TO BANK OF AMERICA, N.A.

This matter having come before the Court on a noticed final hearing (the "**Final Hearing**") on the *Motion for Authority to Use Cash Collateral and for Related Relief* (Docket No. 6) (the "**Cash Collateral Motion**") filed by Daily Office Products, Inc., the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), seeking authority to use the cash collateral of Bank of America, N.A. as successor in interest by merger with LaSalle Bank N.A (the "**Bank**");[1] and the Debtor and the Bank having agreed to the Debtor's use of the Bank's cash collateral on an interim basis pursuant to prior interim cash collateral orders (including Docket Nos. 22, 32, 38 and 44) (the "**Interim Orders**"); the Debtor and the Bank stipulate and agree as follows:

A. As of May 11, 2011, the date on which the Case commenced (the "**Petition Date**"), the Debtor was indebted to the Bank for certain outstanding loans (the "**Loans**") having an approximate principal balance of $301,617.98, plus accrued interest of no less than $5,851.87,

---

[1] Capitalized terms not otherwise defined herein or in the Bankruptcy Code shall have the meaning ascribed thereto in the Motion.

426571_5.DOC

plus accrued late fees and other fees and charges (including attorneys fees) of no less than $21,079.15, for an aggregate total amount then due of no less than $328,548.90 (the "**Pre-petition Indebtedness**"). The Debtor acknowledges and agrees that the Debtor has no causes of action against the Bank and that the Pre-petition Indebtedness is not subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under title 11 of the United States Code (the "**Bankruptcy Code**" or "**Code**"), applicable non-bankruptcy law, or otherwise.

B. The Loans are evidenced and secured by certain documents (collectively, the "**Loan Documents**"), including but not limited to all ancillary documents, instruments and agreements described in, related to or made in connection with the documents described below:

1. LaSalle Bank National Association ("**LaSalle**"), now Bank, made a loan to Debtor in the original principal amount of $558.500.00 pursuant to a series of promissory notes dated January 15, 2005 and February 3, 2005 in the respective amounts of $250,000.00, $200,000.00, $100,000.00, and $8,500.00 (collectively, as amended or modified from time to time, and collectively with related loan documents the "**2005 Notes**").

2. The 2005 Notes in the original amounts of $100,000.00 and $8,500.00 were paid. The 2005 Note in the original amount of $250,000.00 remains outstanding and has been amended and modified with respect to, among other things, the applicable interest rate and default interest rates (the "**$250k Note**"). The 2005 Note in the original amount of $200,000.00 remains outstanding and has been

amended and modified with respect to, among other things, the applicable interest rate (the "**$200k Note**").

3. On January 14, 2005, Debtor and LaSalle (now Bank) entered into that certain Commercial Security Agreement, pursuant to which the Debtor granted to LaSalle (now Bank) a security interest in personal property (described therein) of the Debtor "to secure the Indebtedness[.]" "Indebtedness" is defined in the Commercial Security Agreement as including "all claims by Lender against Borrower . . . whether now existing or hereafter arising[.]" On February 9, 2005, LaSalle filed UCC-1 number 9530347 with the Secretary of State of Illinois, naming Debtor as debtor and covering the following collateral (the "**Bank Personal Property Collateral**"):

All inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to the foregoing; all proceeds relating to any of the foregoing (including Insurance, general intangibles and other accounts proceeds).

On December 23, 2009, Claimant filed continuation UCC financing statement number 09019644 with the Secretary of State of Illinois, referring to UCC-1 number 9530347.

4. The Debtor's obligations under the 2005 Notes are further secured by, among other things, that certain first mortgage and assignment of rents and leases (the "**Mortgage**") on commercial real estate located at 804 Eagle Drive, Bensenville, Illinois 60106 (the "**Bank Real Property Collateral**" and, collectively with the

3

Bank Personal Property Collateral, the "**Bank Collateral**"), dated February 3, 2005 (recorded on February 16, 2005 with the DuPage County Recorder of DuPage County, Illinois). The Mortgage provides that it is given to secure "**(A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGATE.**" (emphasis in original). "Indebtedness" under the Mortgage is defined as including all "obligations, debts and liabilities, plus interest thereon, of Borrower to Lender . . . whether now existing or hereafter arising[.]" The Mortgage elsewhere states expressly that it "secures, in addition to the amounts specified in the [2005 Notes], all future amounts Lender in its discretion may loan to Grantor, together with interest thereon."

5. As of the Petition Date, the principal amount due to Bank under the $250k Note was $204,071.19. From and after March 11, 2011, the interest charged on such note increased from the non-default interest rate of the Prime Rate plus 3% (approximately 6.25%) to the default interest rate of Prime Rate plus 9%. As of the Petition Date, the interest due to Bank from Debtor under the $250k Note was $4,457.19. As of that same date, accrued late charges under the $250k Note were $10,544.35. The total due under the $250k Note as of the Petition Date (excluding attorneys' fees) was at least $219,072.63.

6. As of the Petition Date, the principal amount due to Bank under the $200k Note was $97,546.79. As of that same date, the interest due to claimant from Debtor

4

under the $200k Note at the non-default interest rate of 8.17% was $1,394.68. The total due under the $200k Note as of the Petition Date (excluding attorneys' fees) was at least $98,941.47. As of the Petition Date, the aggregate amount owed under the $250k Note and the $200k Note (excluding attorneys' fees) was at least $318,014.10,

7. Each of the $250k Note and the $200k Note provides that Borrower will pay Lender the amount of fees and expenses of those whom Lender hires to collect such notes, and that such amounts include "Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals[.]" Bank has incurred no less than $14,769.80 in reasonable attorneys' fees and expenses in attempting to collect the amounts described above due to Bank from Borrower, including fees and expenses for bankruptcy proceedings. Adding such fees to the principal, interest, charges, and fees owed as of the Petition Date under the $250k Note and the $200k Note brings the total Indebtedness to no less than $332,783.90. All of such amount is secured by the Mortgage and other security described herein.

C. The Pre-petition Indebtedness is an allowed secured claim against Debtor in the amount of $328,548.90 (plus reasonable additional attorney's fees and costs through date the date the Pre-petition Indebtedness is paid indefeasibly to Bank or the date a plan is confirmed in the Case, whichever occurs earlier), which is exclusive of amounts to which Bank is entitled pursuant to section 506(b) of the Bankruptcy Code, which include accrued and accruing: (a)

5

interest at the rates of interest described above; (b) all fees, costs, expenses, and other charges due or coming due under the Loan Documents or in connection with the Pre-petition Indebtedness (regardless of whether such fees, costs, interest and other charges are included in any Budget (as defined herein); and (c) all costs and expenses at any time incurred by Bank in connection with: (i) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (ii) the legal representation of Bank in the Case, including in defending any Challenge (as defined below), but only to the extent allowable under the Loan Documents and section 506(b) of the Bankruptcy Code (the "**Allowable 506(b) Amounts**"). The Bank has and retains all claims against the Debtor arising out of the Loan Documents, including for:

1. The Pre-petition Indebtedness plus all Allowable 506(b) Amounts;

2. Post-petition interest, which accrues under the 250k Note at the ~~default~~ *non-default* interest rate of Prime Rate plus ~~X~~ *3*%, as described in the Loan Documents, and as of the Petition Date equaled ~~$XX.XX~~ *$35.43* per day, and which interest will continue to accrue through payment in full of the 250k Note to the fullest extent allowed as an Allowable 506(b) Amount;

3. Post-petition interest, which accrues under the 20k Note at the non-default interest rate of 8.17%, as described in the Loan Documents, and as of the Petition Date equaled $22.14 per day, and which interest will continue to accrue through payment in full of the 200k Note to the fullest extent allowed as an Allowable 506(b) Amount, and

6

4.  Reimbursable and accruing charges including bank fees and out of pocket charges for legal fees and costs incurred by the Bank on and after the Petition Date to the fullest extent allowed as an Allowable 506(b) Amount.

D.  Any and all cash, checks, negotiable instruments, securities, documents of title, deposit accounts, proceeds, products or profits of property, receivables and other cash equivalents obtained by Debtor from all of its operations or which are proceeds of any interest in the Bank Collateral constitute "cash collateral" of the Bank under section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). The Bank Collateral extends to, and the Pre-petition Indebtedness is secured by, the Cash Collateral pursuant to section 552(b) of the Code.

E.  The Debtor agrees to make the following payments to the Bank during the Case: monthly interest on the 250k Note and the 200k Note at the interest rates specified above, with an initial stipulated payment of $2010.79 paid commencing with the month of September 2011 and with the same amount payable on the first business day occurring on or after the fifteenth day of each month thereafter ("**Interest Payments**").

F.  Debtor represents that the budget attached hereto as <u>Exhibit "A"</u>, or as such Budget may be modified in writing with the prior written consent of the Bank, which consent shall not be unreasonably withheld (the "**Budget**") contains a good faith estimate of all expenses that are reasonable and necessary for the operation of its business and the preservation of the Cash Collateral and the Bank Collateral (collectively, the "**Collateral**") through the period for which the Budget runs, and therefore includes all estimated amounts potentially chargeable to Bank under section 506(c) of the Bankruptcy Code. Accordingly, Debtor hereby waives any claim against Bank pursuant to section 506(c) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) applicable to the Collateral.

7

Debtor acknowledges and agrees that it shall not use any of the Cash Collateral for any purpose other than the specific expenses identified in the Budget or as such Budget may be modified in writing with the prior written consent of the Bank and in accordance with the terms of this Order, except as the Bank may otherwise agree in writing

G.  As protection of the interest of the Bank in the Collateral, but not necessarily full adequate protection within the meaning of sections 361 and 363 of the Bankruptcy Code, and for Debtor' use of Cash Collateral and the potential diminution in value thereof, the Debtor has agreed to provide the Bank with the Replacement Liens on the Replacement Collateral (as those terms are defined below).

H.  The Bank consents to the terms of this Order and is entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of its interests in the Collateral from and after the Petition Date (the "**Collateral Decrease Amount**").  Debtor represents that under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Bank's consent to the use of Cash Collateral and the entry of this Order is in the best interest of Debtor's estate and its creditors.

**THE COURT HEREBY FINDS**:

I. Petition Date.  On the Petition Date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

II. Debtor in Possession.  The Debtor has continued in the management and possession of its business and property as debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code.  No Official Committee of Unsecured Creditors has been appointed in this Case.

III. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 & 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 & 1409.

IV. <u>The Bank's Pre-petition Claim</u>. The Bank asserts and the Debtor acknowledges that, as of the Petition Date, the Bank holds an allowed secured claim against the Debtor in the amount of $328,548.90 (plus reasonable additional attorney's fees and costs through date the date the Pre-petition Indebtedness is paid indefeasibly to Bank or the date a plan is confirmed in the Case, whichever occurs earlier), which is exclusive of accrued and accruing Allowable 506(b) Amounts and that all cash now or hereinafter in the possession of the Debtor constitutes "cash collateral" of the Bank within the meaning of section 363 of the Bankruptcy Code.

**Based upon the foregoing stipulations of the Debtor and the Bank, as well as the findings and conclusions, the Cash Collateral Motion, and the record before the Court with respect to the Motion; the Debtor and the Bank having agreed to the Debtor's use of the Cash Collateral on a final basis pursuant to the terms of this Order; the Final Hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); due and proper notice of the Motion and the Final Hearing having been given to all parties entitled thereto; no objection to the Motion having been filed or served by any creditor or party in interest; and good and sufficient cause appearing therefore,**

**IT IS HEREBY ORDERED that:**

1. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Order, the Debtor may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the Budget, or as such Budget may be modified in writing with the prior written consent of the Bank, which consent shall not be unreasonably withheld, including the Interest Payments

subject to such payments being reclassified and reallocated to principal payments in the event that it is later determined that the Bank is not entitled to receive interest on its Pre-petition Indebtedness or reimbursement of legal fees as Allowable 506(b) Amounts. Absent further order of Court or the consent of the Bank, the Debtor shall not be authorized to use Cash Collateral to pay any items in excess of 115% of the total monthly cash disbursements and expenses amounts set forth in the Budget.

2. <u>Replacement Liens</u>. As protection of the interest of the Bank in Cash Collateral, but not necessarily adequate protection within the meaning of sections 361 and 363 of the Bankruptcy Code, for Debtor's use of Cash Collateral and the potential diminution in value thereof, and as additional security for the Pre-petition Indebtedness, the Bank is granted, to the same and extent and priority as the Bank's valid pre-petition security interests in the Bank Collateral, replacement security interests in and liens upon all of Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtor, including but not limited to, all assets of Debtor like those included among Bank Collateral, including all proceeds, products, rents and/or profits thereof and including Avoidance Recoveries which are included within the scope of Bank Collateral (such collateral, collectively, the "**Replacement Collateral**," and such replacement security interests and liens, the "**Replacement Liens**"). The Replacement Liens shall be enforceable in an amount equal to the aggregate post-petition diminution (whether as a result of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise) in the value of the interest of the Bank in the Bank Collateral, as such Bank Collateral existed as of the Petition Date, including, without limitation, the post-petition diminution in value of the Bank Collateral resulting from Debtor's use of Cash Collateral as provided herein. Without limiting the generality of the foregoing, the Bank's liens

on Replacement Collateral: (a) shall be subject only to non-avoidable, valid, enforceable and perfected liens and security interests in the Pre-petition Bank Collateral and Replacement Collateral of Debtor that existed on the Petition Date; (b) shall at all times be senior to the rights of Debtor; and (c) shall be senior to any security interest in or lien on the Replacement Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under section 551 or any other provision of the Bankruptcy Code.

       3.      <u>Validity and Perfection of Replacement Liens</u>. The Replacement Liens on the Replacement Collateral granted to the Bank shall be, and hereby are, deemed valid, enforceable and duly and automatically granted and perfected and recorded under all applicable federal or state or local or other laws, statute, rule or regulation, and no notice, filing, mortgage recordation, possession, further order or other act shall be required to effect such grant or perfection of such Replacement Liens; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, the Bank may, at its sole option, file or record or cause Debtor to execute, file or record such UCC financing statements, notices of liens and security interest, mortgages, or other similar documents as the Bank may require.

       4.      <u>Adequate Protection Superpriority Claims.</u> The Bank shall have all of the rights accorded to it pursuant to section 507(b) of the Bankruptcy Code in respect of the adequate protection provided herein. Pursuant to sections 503(b) and 507(b) of the Bankruptcy Code and to the extent of the value of the pre-petition Bank Collateral is less than the Pre-petition Indebtedness as a result of the Debtor's use of Cash Collateral, the Court grants to the Bank an allowed superpriority administrative expense claim (the "**Adequate Protection Superpriority Claim**"). The Adequate Protection Superpriority Claim shall have priority over all other administrative expenses allowable under the Code pursuant to section 507(b) of the Bankruptcy

Code, but shall be junior to: (a) all prior perfected and unavoidable secured claims in property of the Debtor's estate as of the Petition Date and to the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; and (b) the fees and expenses of the Clerk of this Court.

5.   <u>The Debtor's Obligations</u>.  The Debtor shall maintain insurance of the kind covering the Bank Collateral, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the businesses in which the Debtor is engaged.  The Debtor shall comply with the stipulations and agreements with the Bank as described in this Order.  So long as this Order is in effect, the Debtor shall not attempt to grant any entity, other than the Bank, a lien or security interest in any assets of the Debtor, including Cash Collateral and all other assets subject to the Replacement Liens, pursuant to section 364 of the Bankruptcy Code or otherwise, having priority over or parity with the Bank' secured interests in such assets without the prior express written consent of the Bank.

6.   <u>Debtor Financial Reports</u>.  The Debtor shall promptly provide the Bank with copies of all financial reports made to the Court or to the United States Trustee, including, without limitation, the monthly operating report for the prior month that the Debtor is required to file with the United States Trustee's office, along with all reports of revenues and expenses, and all other reports of financial data given by the Debtor to any other party, or reasonably requested by the Bank.  Without limiting the foregoing, Debtor shall provide the Bank, to the extent available, with monthly reports which include but are not limited to: the Variance Report and Escrow Report  (as those terms are defined in the Interim Orders); and (b) all other reports previously required and furnished by the Debtor to the Bank under the Loan Documents. Without limiting the foregoing, the Debtor shall provide the Bank with copies of any inventories

or appraisals or reports conducted or obtained covering any and all personal property and real property of Debtor.

7. <u>Challenge Rights</u>. Notwithstanding anything herein to the contrary, any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in the Case or any successor case or in any jurisdiction) shall have until 75 days after the entry of this Order (the "**Investigation Termination Date**") to commence an adversary proceeding or contested matter (each, a "**Challenge**") that: (a) challenges that validity, extent, perfection, and enforceability of any of the Bank's pre-petition liens and security interests on any Debtor property; or (b) asserts any other claims or causes of action against the Bank. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Bank under this Order or the Loan Documents pending a ruling on such Challenge. If no Challenge is filed on or before the Investigation Termination Date, then. without further order of the Court: (x) the claims, liens and security interests of the Bank shall be deemed to be allowed for all purposes in the Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise; (y) the Debtor and its estate shall be deemed to have waived, released and discharged Bank and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Pre-petition Indebtedness, the Bank Collateral, the Loan Documents or otherwise; and (z) the other agreements, acknowledgements, releases and stipulations contained in this Order shall be irrevocably binding on the Debtor's estate, and all other parties in interest

(including, without limitation, any receiver, administrator, or trustee appointed in the Case or any successor case or in any jurisdiction).

8.  <u>Automatic Stay</u>. The automatic stay of section 362 of the Code shall be modified to the extent necessary to implement the provisions of this Order.

9.  <u>Miscellaneous Provisions</u>. The Bank shall be conclusively presumed to have requested adequate protection as of the Petition Date. Nothing contained in this Order shall preclude the Bank from seeking additional or different adequate protection, and this Order is without prejudice to the right of the Bank from seeking to terminate or modify the automatic stay or the right of Debtor and other parties in interest to oppose such relief.

10. Bank shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Loan Documents, the Pre-petition Indebtedness, the Bankruptcy Code, or applicable non-bankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Bank, as applicable, and directed to Debtor. No failure of Bank to require strict performance by Debtor (or by any Trustee or other successor of Debtor) of any provision of this Order shall waive, affect or diminish any right of Bank thereafter to demand strict compliance and performance therewith. No delay on the part of Bank in the exercise of any right or remedy under this Order, the Loan Documents, the Pre-petition Indebtedness, the Bankruptcy Code, or applicable non-bankruptcy law shall preclude Bank's exercise of any right or remedy. This Order shall not constitute a waiver by Bank of any of its rights under the Loan Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation their right to later assert: (a) that its interests in the Bank Collateral lack adequate protection within the meaning of sections 362(d) or 363(e) of the Bankruptcy Code or any other provision thereof; or (b) a claim under section 507(b) of the Bankruptcy Code, except that, absent

a material change of circumstances, the Bank shall be prohibited from asserting that its interests in the Bank Collateral is not adequately protected if the Debtor is in compliance with this Order and any Budget approved by the Bank.

11.    Effect of Later Modification.  If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such modification, vacatur, or stay shall not affect: (a) the validity of any rights or claims of the Bank arising hereunder prior to the effective time of such modification, vacatur, or stay; (b) the validity and enforceability of any lien or priority authorized hereby; or (c) the governance by the original provisions of this Order of any lien or priority authorized hereby and any rights or claims of the Bank arising hereunder prior to the effective time of such modification, vacatur, or stay or vacatur.

12.    Additional Cash Collateral.  The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral if the Debtor determines that the Cash Collateral use authorized by this Order is insufficient.

13.    Immediate Effectiveness of Authority.  The Debtor's authority to use Cash Collateral under this Order shall be effective immediately and shall extend through the term of the Budget (as such Budget may be subsequently extended by agreement between the Debtor and the Bank).  To the extent any provision of this Order conflicts with any provision of the Cash Collateral Motion, the provisions of this Order shall control.

14.    Survival.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with any order which may be entered in the Case: (a) confirming any chapter 11 plan accepted by the Bank unless such plan specifically modifies or vacates this Order; (b) converting the Case to a

case under chapter 7 of the Code; (c) dismissing the Case; (d) withdrawing of the reference from this Court; or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Pre-petition Indebtedness plus any accrued and accruing Allowable 506(b) Amounts are indefeasibly paid in full in cash and discharged.

15. The deadline for the Debtor to file a chapter 11 plan and disclosure statement, which was as September 6, 2011 by prior order of this Court (at Docket No. 8, entered May 11, 2011), is hereby extended to November 10, 2011. The status hearing on the Debtor's chapter 11 plan and disclosure statement, currently scheduled to be conducted on September 27, 2011, at 10:30 a.m., by the same order of this Court, is hereby rescheduled to November 29, 2011, at 10:30 a.m.

ENTER:

_____
United States Bankruptcy Judge

AUG 2 3 2011

**AGREED TO:**

| **DAILY OFICE PRODUCTS, INC.** | **BANK OF AMERICA, N.A.** |
|---|---|
| By: _____ | By: _____ |
| One of its attorneys | One of its attorneys |
| John Redfield | Christopher M. Cahill |
| Crane, Heyman, Simon, Welch & Clar | Lowis & Gellen LLP |
| 135 S. LaSalle Street, Ste. 3705 | 200 West Adams St., Suite 1900 |
| Chicago, IL 60603 | Chicago, IL 60606 |

16

# EXHIBIT A

MONTHLY OPERATING BUDGET

| FIXED EXPENSES | | |
|---|---|---|
| INSURANCE STATE FARM | | |
| 1999 FORD | 80.98 | |
| 2001 FORD | 91.37 | |
| 1998 DODGE | 88.25 | |
| COMMERCIAL UMBRELLA | 74.58 | |
| WORKERS COMPENSATION | 75.16 | |
| BUSINESS POLICY | 162.75 | |
| | | 573.09 |
| HEALTH INSURANCE | | |
| AETNA | 1834.00 | |
| AFLAC | 330.40 | |
| | | 2164.40 |
| TRUCK EXPENSES | | |
| GASOLINE, LICENSE PLATES | | |
| REPAIRS,TIRES,BRAKES | | |
| LAST YEAR $55267.42 | 4605.62 | 4605.62 |
| COMMUNICATIONS | | |
| COMCAST | 281.47 | |
| 4- CELL PHONES SPRINT | 200.00 | |
| | | 481.47 |
| COMPUTER EXPENSES | | |
| QUICK BOOKS | 35.00 | |
| TRADE SERVICES | 108.90 | |
| BRITANIA WEB SITE ETC | 956.00 | |
| | | 1099.90 |
| BUILDING BUDGET | | |
| LAWN MAINT | 75.00 | |
| SNOW REMOVAL | 105.42 | |
| GARBAGE REMOVAL | 167.35 | |
| FIRE EXTINGUISHERS | 7.83 | |
| NICOR GAS | 343.67 | |
| COMED | 197.20 | |
| WATER BILL | 314.10 | |
| MAINTENANCE | 105.00 | |
| | | 1315.57 |
| REAL ESTATE TAXES | | |
| 10090.66 PER YEAR | | |
| 1-Jun 5045.33 | | |
| 1-Sep 5045.33 | | |
| 6 MONTHS TILL NOV 16 TH | 1681.78 | 1681.78 |
| BANK OF AMERICA | | |
| BLDG NO1 204071.2 | | |
| 2ND LOAN 97546.79 | | |
| 301618 | | |
| BAL TIMES 8% | 2010.79 | |
| CHASE CREDIT LINE 85901.69 | 300.00 | |
| POSTAGE | 220.00 | |



EXHIBIT A

| | | | |
|---|---:|---:|---|
| ADVERTISING | 150.00 | | |
| ~~PROFESSIONAL SERVICES~~ | | | |
| ~~ACCOUNTING~~ | ~~250.00~~ | | |
| ~~LEGAL~~ | ~~250.00~~ | | |
| OFFICE SUPPLIES | 300.00 | | |
| | | 1170.00 | |
| TOTAL FIXED | | 13091.83 | |

VARIABLE EXPENSES BASED ON SALES

| | | | |
|---|---:|---:|---|
| LAST YEA  632244.7 AVERAGE | 52687.06 | 52687.06 | APPROXIMATELY @28% G.P. |
| SALES TAX PAYABLE | | | |
| LAST YEA  66714.64 AVERAGE | 5559.55 | 5559.55 | |
| APRIL 2011 CURRENT DUE | 4249.00 | | |

| | MONTHLY | | |
|---|---:|---:|---|
| PAYROLL | | | |
| DOUG ZURKO | 2520.00 | | |
| COMMISSIONS | 500.00 | | |
| DAVID OHARA | 2646.00 | | |
| KEVIN GRIFFIN | 1153.85 | | |
| LOU ZEITLER | 1153.85 | | |
| | 7973.70 | | |
| TAXES | 637.90 | | |
| TOTAL VARIABLE | | ~~66858.21~~ 66358.21 | |
| TOTAL EXPENSES | | ~~79950.04~~ 79450.04 | |
| AVERAGE MONTHLY SALES | | 82567.01 | |
| AVERAGE MONTHLY NET | | ~~2616.97~~ 3116.97 | |